**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 19-91-DLB-CJS**

**ROBERT G. MEYROSE**                                                                                     **PLAINTIFF**

**v.**                                    **MEMORANDUM OPINION AND ORDER**

**VITAS HOSPICE SERVICES, LLC**                                                        **DEFENDANT**

****************

This is an employment discrimination action brought under the federal Age Discrimination in Employment Act of 1967 ("ADEA") and the Kentucky Civil Rights Act ("KCRA"). Plaintiff Robert Meyrose is a former employee of Defendant Vitas Hospice Services, LLC ("Vitas"). In late 2017, Meyrose unsuccessfully interviewed for a promotion with Vitas (Doc. # 1 ¶ 13-16), and in July 2018, Vitas fired Meyrose after he received negative performance evaluations. (*Id.* ¶ 26). One year later, Meyrose filed this lawsuit, alleging that he was denied the promotion and fired from Vitas because of age discrimination. (*See generally id.*) The matter is currently before the Court on Vitas' Motion for Summary Judgment (Doc. # 32). That Motion has been fully briefed and is thus ripe for review. (Docs. # 38, 39). For the reasons stated herein, Vitas' Motion for Summary Judgment is **granted** in full, and Judgment will be entered in favor of Defendant.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

Robert Meyrose worked in information technology at Vitas from 2006 until 2018, when he was fired by the company. (*See* Doc. # 1). In 2007, Meyrose was promoted to Manager, and in 2009, he took on additional responsibilities, which included supervising

a team of employees and overseeing Vitas' IT help desk.  (*Id.* ¶ 10).    In 2010, Meyrose was promoted to Director, and in 2014, he was promoted to Senior Director of User Support.  (*Id.* ¶ 11-12).  Three years later, in 2017, Vitas announced a restructuring effort, by which it created a new position: Assistant Vice President ("AVP") of Support.  (*Id.* ¶ 14).  Meyrose believed he would be the "clear top choice" for the AVP of Support position, but he was not chosen for the new position.  (*Id.* ¶ 15).  Instead, Vitas chose Naresh Samlal for the position, a younger employee whom Meyrose believes was not qualified, and was favored due to his younger age.  (*Id*. ¶ 27).

In early 2018, Meyrose received poor feedback on his job performance from his supervisor, Patrick Hale, in a performance evaluation and Vitas placed him on a Performance Improvement Plan ("PIP").  (Doc. # 38 at 4).  According to Meyrose, that 2018 review was the first time he had ever received poor feedback on his job performance.  (*Id.*)  Meyrose disputed the February performance review, writing a "lengthy rebuttal," as he believed the review was "filled with false statements" about his job performance at Vitas.  (Doc. #1 ¶¶ 20, 21).  Finally, in April, May, and June, he received written warnings from Vitas regarding his job performance, and in early July, he was terminated from employment.  (*Id.* ¶¶ 23-25).

Meyrose filed this lawsuit in July 2019, alleging age discrimination in violation of the ADEA and the KCRA.  (*Id.*).  Initially, "Vitas Healthcare Corporation of Ohio" was incorrectly named as the defendant, (*id.*), and the current Defendant, Vitas Hospice Services, LLC, was substituted as the correct party in April 2020.  (Doc. # 17).  After discovery was completed, Vitas filed the pending Motion for Summary Judgment.  (Doc.

# 32).  Meyrose responded, (Doc. # 38), Vitas replied, (Doc. # 39), and the fully briefed Motion for Summary Judgment is now before the Court for adjudication.

## II.    ANALYSIS

### A.    Standard of Review

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, no genuine dispute exists where *no* reasonable jury could return a verdict for the nonmoving party. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  Lastly, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Age Discrimination in Employment Act prohibits the discharging of an employee "because of [the employee's] age."  29 U.S.C. § 623(a)(1).  Kentucky has a parallel statute, the Kentucky Civil Rights Act, which outlaws discharging an employee "because of the individual's . . . age forty (40) and over."  Ky. Rev. Stat. § 344.040(1)(a). The legal analysis of claims brought under the ADEA and the KCRA is the same. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (citing *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984).  Thus, legal analysis of an ADEA claim and a KCRA claim can be conducted simultaneously.

3

To succeed on an ADEA claim, a plaintiff must show that "age was the but-for cause of the employer's adverse action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).  A plaintiff can make that showing either by direct or circumstantial evidence, but in cases where the plaintiff uses circumstantial evidence, the claim is analyzed by the well-settled burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012).

Direct evidence of age discrimination is "evidence that proves the existence of a fact without requiring any inferences."  *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544 (6th Cir. 2004).  In this case, Plaintiff has not offered direct evidence of discrimination. Instead, he points to the patterns of discipline that appeared late in his career, a promotion given to a younger employee instead of him, and a statement at a deposition about being "resistant to change," which he asserts is discriminatory in nature.  (*See generally* Doc. # 38).  The Court finds that none of these assertions are tantamount to direct evidence, as none of Plaintiff's supervisors directly mentioned his age.[1]  Thus, Plaintiff's claims will be evaluated under the *McDonnell Douglas* burden-shifting framework.

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination through circumstantial evidence, 411 U.S. at 802, with the Court drawing all reasonable inferences in favor of the non-moving party.  *Zenith Radio Corp.*, 475 U.S. at 587.  Second, the burden of production then shifts to the defendant, who must provide legitimate, non-discriminatory reasons for the adverse employment decision.  *Rowan*, 360

---

[1]     *Cf. Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) ("[Direct] evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'"); *see also Rowan*, 360 F.3d at 548 (finding no direct evidence where plaintiffs "point[ed] to several statements . . . about the general need to lower the average age of the workforce.").

F.3d at 547 (citing *McDonnell Douglas*, 411 U.S. at 802).  Lastly, the burden of production shifts back to the plaintiff, who must then establish that those provided reasons are pretext for discrimination based upon age.  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).

More specifically, however, at the summary judgment stage, the *McDonnell Douglas* framework exists to assist courts in determining whether a reasonable jury could return a verdict for the non-moving party.  *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011).  But the framework is nonetheless viewed through the lens of the summary judgment standard, which is "whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry."  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 1999).  If, at any step, the burdened party is unable to meet its burden, thus showing that no reasonable jury could find in its favor, then summary judgment should be decided against that party.  Here, since the defendant is the movant, the plaintiff must meet its burden with respect to the first and third steps to survive summary judgment, and the defendant must meet its burden on the second to obtain summary judgment.  *See, e.g.*, *Gahman v. BST N. Am., Inc.*, No. 19-153-DLB-CJS, 2021 WL 4164681, at *3 (E.D. Ky. Sept. 13, 2021).

Before moving into analysis of the instant Motion, however, the Court must address a lack of clarity in the complaint and briefings.  Confusingly, in this case, Plaintiff attempts to plead a case of discriminatory termination and discriminatory failure to promote without differentiating between the two claims.  Equally confusing is that Defendant, who as the movant, bears the burden of pleading in summary judgment questions, does not attempt to differentiate between the two claims until its Reply.  (*Compare* Doc. # 39 at 8 *with* Doc. # 32-1 at 13).  At paragraphs 26 and 27 of his Complaint, Plaintiff notes that he was

terminated, *and* that a promotion for which Plaintiff was interviewed was given to "a much less qualified individual in his mid-30s." (Doc. # 1 ¶¶ 26, 27). But in Count I and Count II of the Complaint, he only titles those counts as "Age Discrimination," then providing short recitals of elements and "realleg[ing] the foregoing paragraphs as if fully written [t]herein." (*Id.*).

While the analyses for both claims are similar, they are nonetheless different at the prima facie stage, and elsewhere, as the facts relevant to one claim are not entirely operative in the other, and vice versa. *See, e.g.*, *Provenzano*, 663 F.3d at 812 (analyzing failure to promote under the ADEA); *Gregory v. Univ. Hosp., Inc.*, 2009 WL 2145678, at *11 (S.D. Ohio July 14, 2009) (mentioning separate and distinct prima facie case analyses of discriminatory failure to promote and termination claims). In an effort to draw all reasonable inferences in favor of the non-moving Plaintiff, *Zenith Radio Corp.*, 475 U.S. at 587, the Court will nonetheless evaluate both termination and failure to promote under Plaintiff's broadly labeled claim of "Age Discrimination" (Doc. # 1 ¶¶ 28, 34, et seq.) under the *McDonnell Douglas* framework.

### B.   Termination Claim

Meyrose has alleged that Vitas terminated him from his position of Senior Director of User Support as a result of age discrimination, in violation of the ADEA and the KCRA. With respect to this claim of discriminatory termination, the Court holds that while Meyrose has established  a prima facie case, he has not offered evidence to raise a triable question of fact with respect to whether Vitas' proffered legitimate reasons for terminating him were a pretext for age discrimination. Thus, his termination claim cannot survive summary judgment, and judgment will be entered in favor of Defendant that claim.

### 1.    *Prima Facie Case*

To state a prima facie case of employment discrimination, a plaintiff must show: (1) that he is a member of a protected class, (2) that he is qualified for the job in question, (3) that he suffered an adverse employment action, and (4) the existence of circumstances that support an inference of discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020). In age discrimination cases, the fourth element is somewhat case specific, and can be satisfied by the plaintiff showing that he was replaced by a younger worker, or in the alternate, that he was treated less favorably than similarly situated employees, if he wasn't replaced. *Id.*; *see also Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008). Plaintiff's burden at the prima facie stage is "not onerous" and "poses a burden easily met," as this stage is "meant simply to force a defendant to proceed with its case." *Provenzano*, 663 F.3d at 812 (quoting *Cline*, 206 F.3d at 660).

Here, no dispute exists as to the first and third elements. As both parties state, Meyrose is clearly a member of a protected class, and he suffered an adverse employment action after being terminated from his position. (Docs. # 32-1 at 13 and 38 at 10). Furthermore, with respect to the fourth element, the Senior Director position was not filled after Meyrose's termination (Doc. # 39 at 11), so the inquiry as to whether he was replaced by a younger person is moot, leaving available only a showing that Meyrose was treated less favorably than similarly situated employees. Thus, remaining are the second element and one aspect of the fourth element: whether Meyrose was qualified for the Senior Director of User Support role, and whether he was treated less favorably than similarly situated employees.

7

In determining whether Plaintiff was qualified for the job in question, the Sixth Circuit has stated that the Court should evaluate "a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc).  An important consideration in this inquiry is avoiding conflation of "the non-discriminatory reasons for termination with the qualifications for the job." *Gaglioti v. Levin Group, Inc.*, 508 F. App'x 476, 480 (6th Cir. 2012).  Accordingly, at this stage, "any argument by a defendant that a plaintiff is unable 'to carry out his job functions in a satisfactory manner . . . impermissibly conflates'" the first stage of the *McDonnell Douglas* framework, the prima facie analysis, with the second stage, which examines the employer's subjective reasons for the adverse action.[2] *Gahman*, 2021 WL 4164681 at *3 (quoting *Gaglioti*, 508 F. App'x at 480).  "Objective factors that the Court may consider include the employee's education, experience, and 'demonstrated possession of the required general skills.'"  *Wad v. Amazon.com*, No. 18-97-DLB-CJS, 2020 WL 1066985, at *4 (E.D. Ky. Mar. 4, 2020) (quoting *Wexler*, 317 F.3d at 576).

Here, Meyrose has provided sufficient evidence to show that a reasonable jury could find that he was qualified for the role of Senior Director of User Support.  Vitas promoted Meyrose to the role of Senior Director in July 2012, as Meyrose stated in his

---

[2]     To the extent that Defendant purports to rely upon *Wad v. Amazon.com*, No. 18-97-DLB-CJS, 2020 WL 1066985, at *4 (E.D. Ky. Mar. 4, 2020) as providing a standard which focuses on the employer's expectations at this stage, the Court notes that the next sentence in *Wad*, after the one cited by Defendant, states "Put another way, a plaintiff must present credible evidence that his 'qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field.'"  *Id.* (quoting *Wexler*, 317 F.3d at 575-76).  Furthermore, the Court's analysis in *Wad* falls along the standard provided here, as the inquiry was about whether Mr. Wad could physically perform his job duties, not the employer's assessment of his performance.

deposition (Doc. # 34 at 8), and as Defendants also agree (Doc. # 32-1 at 2). Meyrose worked in that position for six years until his termination. (*Id.*). Under *Wexler*, the qualification element can be met "by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." 317 F.3d at 576. And in making that ruling, the *Wexler* court relied upon *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 372 (6th Cir. 2003), which reasoned that a poorly performing employee was nonetheless qualified for his job because he "worked satisfactorily [for the defendant] for years prior to the [] business's failure. . . ." Analogizing that case to this one, the six years that Meyrose worked for Vitas as Senior Director of User Support prior to his termination clearly shows that he was objectively qualified for the job. Defendant's insistence that negative performance in the latter years of his job made Meyrose unqualified for the job is therefore unavailing.

The fourth element of a prima facie case of age discrimination, circumstances supporting an inference of discrimination, can be met by the plaintiff showing that he was replaced by a younger worker, or that in the alternate, he was treated less favorably than similarly situated employees. *Willard*, 952 F.3d at 808. As previously stated, with respect to the Senior Director position, Meyrose was not replaced, as the position was eliminated after his termination. *Supra* part II(B)(1). As such, in order to satisfy the fourth element, Meyrose will need to show that he was treated less favorably than similarly situated employees, but for purposes of summary judgment, he will only need to raise a genuine issue of material fact as to that factor. Put another way, he must "present 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the

9

plaintiff for discharge for impermissible reasons.'"   *Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).[3]

Meyrose's primary arguments in support of an inference of discrimination are that Vitas had never given Meyrose poor feedback before the period leading up to his termination, a statement by Meyrose's supervisor that he was "resistant to change," that his supervisor mentored a younger employee (to whom a promotion was given over Meyrose) while refusing to similarly mentor Meyrose, and that Vitas "pushed out other older workers just prior to terminating Meyrose."[4]   (Doc. # 38 at 14).   In its reply, Vitas disputes the assertion that it fired older workers at the same time as Meyrose.   (Doc. # 39 at 6), and it notes that the volume of documentation was due to Plaintiff's disputing his evaluations  (*id.* at 7), in addition to other factual disputes.

---

[3]      This standard was cited by Defendant in briefings on the instant Motion, in support of the assertion that Plaintiff's firing from the Senior Director position was a "reduction-in-force."  Even a reduction-in-force case still uses the *McDonnell Douglas* framework, as *Barnes* itself clarified to state that a prima facie case could nonetheless be established when a plaintiff was not replaced by a younger person, provided that the plaintiff provides additional evidence of discrimination. 896 F.2d at 1465 (". . . a plaintiff therefore does not . . . make out a prima facie case absent additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.").  Written in 1990, the standard adopted in *Barnes* is nonetheless one *type* of case-specific inquiry that speaks to the "burden of presenting evidence that raises an inference of discrimination."  *Swerkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *see also Blair v. Henry Filters*, 505 F.3d 517, 529 (6th Cir. 2007) ("We must keep in mind, however, that these are merely various context-dependent ways by which plaintiffs may establish a prima facie case, and not rigid requirements that all plaintiffs with similar claims must meet regardless of context."); *Blizzard*, 698 F.3d at 283 (citing *Swerkiewicz*);  *Willard*, 952 F.3d at 808.  Attempts to obfuscate the legal standard on a differentiation between reductions in force and termination – which have been made by both parties in this action – are disingenuous. The Court cites the *Barnes* standard here, without mention of the reduction-in-force designation, to illustrate that it is nonetheless similarly applicable without labeling the case as a reduction-in-force.

[4]      The Court again notes that Plaintiff does not differentiate between the termination and the failure to promote in briefing on the instant Motion, and so Plaintiff's arguments in favor of the termination claim are construed to the Court's best ability from Plaintiff's brief.  (Doc. # 38).

At this stage, the Court does not "make credibility determinations, nor [does it] weigh the evidence." *Willard*, 952 F.3d at 814. The Court instead merely recognizes that Plaintiff has produced evidence, noting his arguments made in the previous paragraph. And with that, also keeping in mind that the prima facie burden at summary judgment is "not onerous," *Blair*, 505 F.3d at 528 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)), the Court concludes that Meyrose has supplied evidence to create a genuine issue of material fact regarding circumstances supporting an inference of discrimination for purposes of establishing a prima facie case of discriminatory termination.

### 2.   *Legitimate Reasons*

Because Meyrose has established a prima facie case, the burden now shifts Vitas to "articulate some legitimate, nondiscriminatory reason for the termination." *Blizzard*, 698 F.3d at 283 (internal quotations omitted).   Generally speaking, terminating an employee "because he fails to perform satisfactorily is a legitimate and nondiscriminatory reason to end his employment." *Cicero v. Borg-Warner Auto, Inc.*, 280 F.3d 579, 588 (6th Cir. 2002).

Here, Vitas contends that it terminated Meyrose's employment after a 2017 performance evaluation and a subsequent performance improvement plan that outlined Meyrose's poor job performance.   (Doc. # 32-1 at 4).   Plaintiff disagreed with these evaluations, but at this second stage, the Court again does not make credibility determinations, nor does it weigh the evidence.   *Willard*, 952 F.3d at 814.   The Court notes that the evidence exists, and so for purposes of summary judgment, Defendant has

met its burden as to the second part of the *McDonnell Douglas* framework, as it has provided legitimate nondiscriminatory reasons for Meyrose's firing.

### 3.    Pretext

At the third stage of the *McDonnell Douglas* framework, the plaintiff has the opportunity to refute the legitimate reasons provided by the defendant.   The bulk of Meyrose's argument lies in this stage, as he adamantly refutes the validity of the performance evaluations he was given.  According to Vitas, "Plaintiff disagreed with every item in the [performance plan]" that it provided to Meyrose.  (Doc. # 32-1 at 5).  Meyrose agrees, arguing that Vitas "began creating a paper trail of false and unwarranted performance concerns" to justify what he believes was a discriminatory termination.  (Doc. # 38 at 4).   In short, Meyrose believes the performance evaluations were pretext for discrimination.

A plaintiff can show that the defendant's proffered legitimate reasons for the adverse employment action were pretextual by showing that the reasons "(1) have no basis in fact; (2) did not actually motivate the adverse employment action; or (3) were insufficient to warrant the adverse employment action."  *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (cleaned up) (quoting *Hostettler v. College of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018)).  On summary judgment, the court "simply engage[s] in the conventional review of the sufficiency of evidence" required to survive a summary judgment motion.  *Gahman*, 2021 WL 4164681 at *5 (quoting *Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 578 (Ky. 2016)).  Additionally, a plaintiff is free to make arguments beyond the three methods, as they are only a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated

reason or not?" *Miles v. South Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (quoting *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (internal quotations omitted)).

According to Meyrose, he can raise genuine issues of material facts on all three methods of showing pretext. (Doc. # 38 at 17). However, the Court is not convinced by Meyrose's declaration, made in four short paragraphs without a single cite to the record. (*See id.*). The Court has noted in the previous two sections of the *McDonnell Douglas* analysis here that it declines to evaluate the evidence, as it is only called to examine whether or not the plaintiff has provided evidence at the summary judgment stage.

However, that evidence must actually be probative of the issues in question. Unlike the prima facie stage, which calls broadly for "other circumstances," the pretext inquiry is more specific. Here, while Meyrose has provided evidence, none of the evidence ostensibly demonstrates pretext, as "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment," *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (internal quotations omitted), and to establish pretext, "a plaintiff must articulate some cognizable explanation of how the evidence she has put forth establishes pretext." *Miles*, 946 F.3d at 888. Put simply, Meyrose has failed to articulate any cognizable explanation of how the evidence establishes pretext. Thus, no reasonable juror could agree with Meyrose that the legitimate reasons for his termination provided by Vitas were pretext for discrimination, and summary judgment is appropriate.

First, Meyrose claims that Vitas' legitimate reasons have "no basis in fact because all of the performance criticisms are disputed," and "in writing in real time which is very

unusual for a current employee."  (Doc. # 38 at 17).  The Sixth Circuit has made clear that "disagreeing with an employer's 'assessment of performance does not render the employer's reasons pretextual.'"  *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 81 (6th Cir. 2020) (cleaned up) (quoting *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725-26 (6th Cir. 2012)).  In other words, to demonstrate pretext on the first prong, a plaintiff must be able to show that "the employer's proffered reasons never occurred or were factually false."  *Id*. (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002).

Meyrose has not provided any evidence to show that the performance evaluations were false, beyond his subjective belief that they were "unusual" or "questionable" due to their timing, and his subjective disagreements with the company's criticisms of his work. (*See* Doc. # 38 at 17).  Additionally, it is undisputed that the negative performance evaluations occurred, as they have been filed in the record. (*See, e.g.*, Doc. # 32, Exh. 11).  To the extent that Meyrose attempts to establish that the evaluations were factually false, he relies upon his own objections (Doc. # 38, Exh. A), and a collection of positive feedback from "internal clients" that he himself gathered for the purpose of disputing the feedback he received from his supervisor (Doc. # 38 at 5, 11).  That feedback was filed in the record as Exhibit B to Meyrose's Response to the instant Motion (Doc. # 38), but it is unfortunately illegible, and even if it were legible, it would serve no purpose other than to further assert disagreement with Vitas' evaluation of Meyrose.  Disagreement with evaluations is not a valid basis for establishing pretext, *Brown*, 814 F. App'x at 81, as disagreement with something does not equate to it being false.  Furthermore, the Sixth Circuit has also plainly held that statements by "nondecisionmakers" are not instructive of discriminatory animus, and are not assistive to a plaintiff hoping to prove discrimination.

*Geiger v. Tower Auto*, 579 F.3d 614, 621 (6th Cir. 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998). "Internal clients" are not decisionmakers, and the survey of internal clients is thus irrelevant and unhelpful to Meyrose's argument.

Meyrose also asserts that Hale, his supervisor, stated that Meyrose was "well qualified to be promoted," which makes it "simply not believable" that Meyrose could be terminated shortly thereafter. As Hale is a decisionmaker, this assertion could potentially be useful to Meyrose, but Meyrose has failed to cite in the record where the Court (or a reasonable juror) could find Hale's praise. (*See* Doc. # 38 at 17). Meyrose states that Hale "thought all of the internal candidates were well qualified for the new roles . . . including Meyrose." (*Id.* at 3). Later on, Meyrose walks back that statement to instead say that "Hale testified that Meyrose was at least similarly qualified" (*id.* at 10), which seven pages later translates to the uncited assertion that "Hale [said] Meyrose was well qualified," specifically. (*Id.* at 17).

To the extent that record cites were provided by Plaintiff on pages 3 and 10, the Court has reviewed those parts of the record, but finds no evidence supporting that Hale ever told Meyrose that he was "well qualified" for any position.[5] Otherwise, the Court has no duty to "conduct its own probing investigation of the record" on a motion for summary judgment, and it expressly declines to undertake such an effort beyond examining the

---

[5]       The Court's review of the record cites provided by Plaintiff yielded the following quotes from Hale, none of which support Meyrose's proposition that Hale stated that Meyrose was "well qualified": "But I do know – he had a shot." (Hale Deposition, Doc. # 35 at 76);  "I always find it a very good practice to interview internal candidates that are interested.  Even if you think they might not be qualified, let them interview and let's find out." (*Id.* at 81);  "Because I believed he was capable of a lot more than what he was showing us," in response to a question about why Mr. Meyrose was allowed to apply for the AVP role.  (*Id.* at 111-12).

record citations provided in briefing materials. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992).

The second prong of the pretext analysis provides that a plaintiff can establish pretext where the employer's proffered legitimate reasons "did not actually motivate the adverse employment action." *Brown,* 814 F. App'x at 80.  With respect to that prong, Meyrose asserts that Vitas' legitimate reasons did not warrant his termination for the same reasons that he previously stated the reasons have no basis in fact.  (Doc. # 38 at 17) ("Again, the discipline is all disputed and Hale said he was qualified for a promotion just before claiming his performance was so bad it warranted a speedy termination.").  For the same reasons that those arguments fail with respect to the first prong, they fail with respect to the second one, as well – merely disagreeing with performance evaluations is insufficient to establish pretext.  *Brown*, 814 F. App'x at 81.

The last prong allows a plaintiff to establish pretext by showing that the legitimate reasons were actually motivated by discriminatory intent.  *Id.* at 80.  Meyrose attempts to show Vitas' discriminatory intent by noting that Hale referred to Meyrose as being "resistant to change," which Meyrose argues is a "classic stereotypical view of older workers."  (Doc. # 38 at 18).  Additionally, Meyrose argues that Vitas fired other older workers just prior to terminating Meyrose, and that Hale mentored a younger employee "while simultaneously cancelling meetings with Meyrose."  (*Id.*)[6]

Hale's statement that Meyrose was "resistant to change" was made during his deposition, and as shown by Defendant, has been taken out of context by Plaintiff.  (Doc. # 39 at 5).  According to Meyrose, the statement is an "admission of age bias," as it is a

---

[6]     This paragraph is also completely devoid of citations to the record.  (*See* Doc. # 38).

stereotype associated with age discrimination.   (Doc. # 38 at 6).   The Court is not convinced, however, as an argument based upon extremely generalized stereotypes is nothing more than "mere conjecture," which is insufficient.   *Peters*, 285 F.3d at 470. Furthermore, the statement appears to have been deliberately taken out of context by Plaintiff, as Plaintiff's Counsel first asked Hale if Meyrose was resistant to change, which only then prompted him to make the statement that that Plaintiff has alleged was an "admission" of discrimination.  (Doc. # 35 at 134).   Removing the context surrounding a statement is not only disingenuous in litigation, but also fails to create a genuine issue of material fact as to the case at hand, as even within context, one statement at a deposition, and not with reference to a specific interaction suggesting discrimination, is no more than an insufficient "scintilla of evidence."  *Liberty Lobby*, 477 U.S. at 252.

Lastly, Meyrose has also argued that Hale's mentoring of a younger employee, Samlal, to whom a promotion was given over Meyrose, also constitutes evidence of discrimination in support of pretext.  (Doc. # 38 at 18).   Hale stated in his deposition, however, that cancelling meetings with employees was routine for him, and that any additional meetings with Samlal were due to Samlal having requested mentoring from him.  (Doc. # 35 at 56).  Meyrose has not provided any evidence that he would have been treated any differently than Samlal had he also requested mentoring from Hale.[7] Thus, this argument fails to raise any genuine issue of material fact, and the Court concludes that no reasonable jury could find for Meyrose on a finding of pretext.

---

[7]      *Cf. Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 328 (6th Cir. 2021) ("To show pretext on disparate treatment, a plaintiff must provide that employees outside the protected class were not disciplined even though they engaged in *substantially identical conduct* to that which the employer contends motivated [its actions].") (internal quotations omitted).

17

In rebuttal of Meyrose's pretext arguments, Vitas has also invoked the honest belief rule, which allows an employer to avoid a finding of pretext if it can "establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard*, 698 F.3d at 286. If such facts are established, then the plaintiff must "demonstrate that the employer's belief was not honestly held." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Joostberns v. UPS*, 166 F. App'x 783, 791 (6th Cir. 2006)). Here, Vitas has shown particularized facts upon which it relied in firing Meyrose, as its performance evaluations of Meyrose and its termination memo, which details the specific reasons for firing, have been filed in the record. (*See, e.g.*, Doc. # 32-1, Exh. J). Meyrose, then would need to raise a genuine issue of material fact with respect to whether Vitas' beliefs were not honestly held, and as previously stated, the Court finds that he cannot do so.

Accordingly, as Meyrose cannot raise genuine issues of material fact as to a ruling in his favor on all three steps of the *McDonnell Douglas* framework, no reasonable jury could find in his favor, and Vitas' Motion for Summary Judgment with respect to Meyrose's discriminatory termination claim is granted.

### C.    Failure to Promote Claim

Next, the Court considers Meyrose's discriminatory failure to promote claim, which as previously stated, requires a separate analysis from his discriminatory termination claim. Meyrose alleges that in failing to promote him to the position of Associate Vice President of IT Support, Vitas discriminated against him, as it hired a younger individual who Meyrose asserts was less qualified. (*See* Doc. # 38 at 3). Meyrose believed himself to be the "clear top choice for the new role based on his prior performance." (*Id.*). Instead,

the position was given to Samlal, who Meyrose asserts was "significantly younger [and] far less qualified." (*Id.*).  Samlal is 23 years younger than Meyrose. (*Id.*).  In a similar manner as the termination claim, the Court concludes that Meyrose has not offered sufficient evidence to raise triable issues of fact with respect to pretext.  Thus, his failure to promote claim also fails to survive Vitas' Motion for Summary Judgment.

### 1.   *Prima Facie Case*

To state a prima facie case of discriminatory failure to promote, a plaintiff must show: (1) that he is a member of a protected class, (2) that he applied for and was qualified for a promotion, (3) that he was considered for and was denied the promotion, and (4) that other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's promotion was denied.  *Provenzano*, 663 F.3d at 812-13 (citing *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005)).  As previously stated, Plaintiff's burden at the prima facie stage is "not onerous" and "poses a burden easily met," as this stage is "meant simply to force a defendant to proceed with its case."  *Id.* (quoting *Cline*, 206 F.3d at 660).

Here, just as in the wrongful termination claim, the Court finds that Meyrose has established a prima facie case.  Same as before, the second and fourth elements are in dispute.  With respect to the second element, the Court finds persuasive that Meyrose was offered an interview for the AVP position. If he were not qualified objectively, Vitas would not have offered the interview at all.  With respect to the fourth element, Samlal, who was not a member of the protected class, received the promotion sought by Meyrose. (*Id.*).  Furthermore, the Court notes that while the "similar qualifications" inquiry is unique to a failure-to-promote claim, *Provenzano*, 663 F.3d at 814, the fact that both Meyrose

and Samlal were offered interviews by Vitas for the AVP position suggests that at least a genuine issue of fact is raised to the relatively similar qualifications between Meyrose and Samlal.  *See Walls v. Johnson*, 229 F. Supp. 3d 678, 686 (E.D. Tenn. 2017).  Thus, a reasonable jury could find that Meyrose has established a prima facie case, and his failure to promote claim moves to the next step of the *McDonnell Douglas* framework.

### 2.    *Legitimate Reasons*

As for legitimate reasons for the failure to promote Meyrose, Vitas simply states that Meyrose did not perform well in the interview, noting that the interview panel rated Meyrose as the candidate who performed the worst of any who applied for the position. (Doc. # 32-1 at 6).  Furthermore, Vitas stated that Samlal was promoted by a unanimous decision of the same panel, and that Samlal had specific qualifications that the panel was seeking.  (*Id.* at 6, 7).  Thus, the Court finds that a reasonable jury could find that Vitas had legitimate reasons for failing to promote Meyrose, and the argument shifts back to pretext, in the same manner as the discriminatory termination claim.

### 3.    *Pretext*

The standard for establishing pretext in a failure to promote claim is the same as in a termination claim, but nonetheless is separate, because the plaintiff must demonstrate pretext with specific respect to the decision not to promote, and based upon the facts operative to that situation.  As previously stated, a plaintiff can show that the defendant's proffered legitimate reasons for the adverse employment action were pretextual by demonstrating that the reasons "(1) have no basis in fact; (2) did not actually motivate the adverse employment action; or (3) were insufficient to warrant the adverse employment action."  *Brown*, 814 F. App'x at 80.

Here, the Court again notes that Meyrose did not differentiate between the failure to promote and the termination in briefing on the instant Motion, but the Court nonetheless attempts to dissect the arguments made in an effort to construe ambiguities in Meyrose's favor. *Zenith Radio Corp.*, 475 U.S. at 587. However, to the extent that Meyrose re-incorporates the arguments on pretext with respect to the termination claim, the Court finds that they are not sufficient to raise genuine issues of material fact for the same reasons stated previously. *See supra* part II(B)(3).

With specific respect to the failure to promote claim, Meyrose states that "failing to promote the most qualified person after a long track record of solid performance because of an alleged poor interview doesn't make sense – particularly when the ideas presented in the interview are then implemented." (Doc. # 38 at 17-18). The Court construes this sentence as making two arguments in favor of pretext: (1) that Meyrose's relative qualifications to Samlal, as Meyrose was the "most qualified person" for the AVP role, raises a genuine issue of material fact as to whether the reasons proffered by Vitas for the failure to promote were not based in fact, were insufficient to warrant the failure to promote, or did not actually motivate the failure to promote; and (2) that Vitas' implementation of Meyrose's ideas presented in the AVP interview raise the same. For the reasons provided that follow, both arguments fail to raise genuine issues of material fact with respect to pretext.

Beginning with the argument on Meyrose's relative qualifications to those of Samlal, the Sixth Circuit has established that "[r]elative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the

latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'"  *Bartlett v. Gates*, 421 F. App'x 485, 490-91 (6th Cir. 2010) (quoting *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006)).

Here, Meyrose has provided no evidence to suggest that he was "plainly superior" to Samlal, and certainly not to suggest that no reasonable employer would have hired Samlal.  Cases involving the invocation of this prong require the plaintiff to show that the defendant's "asserted business judgment was so ridden with error that defendant could not have honestly relied upon it."  *Bender*, 455 F.3d at 627 (quoting *In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988)).[8]  Even though Meyrose has not cited to the record to support his assertion that he was the "most qualified person," the Court assumes based on prior arguments that Meyrose's assertion rests upon his differences of experience and education with Samlal.  (*See* Doc. # 38 at 3).  Meyrose argues that he has a bachelor's degree, while Samlal does not,[9] and that he had worked for Vitas longer than Samlal, and

---

[8]    *See also Philbrick v. Holder*, 583 F. App'x 478, 485-86 (6th Cir. 2014) (finding plaintiff to be "plainly superior" where she scored the highest of all applicants in an interview process, had significantly more supervisory experience, and a supervisor admitted to the EEOC that she was far better qualified than the chosen applicant); *but see Philbrick*, 583 F. App'x at 492 (Griffin, J., dissenting) (disagreeing with designation of "plainly superior" and noting that "pretext can be established through comparing qualifications only when the disparity in qualifications is so apparent as to virtually jump off the page and slap you in the face." (quoting *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006)).

[9]    Even though Meyrose has not stated this argument outright, the Court also notes that even though Vitas' job description lists a bachelor's degree as required education, it also notes that the "requirements . . . are *representative* of the knowledge, skill or ability required," and that "an individual must be able to perform each essential duty satisfactorily" to "perform [the] job correctly."  (Meyrose Depo., Doc. # 34, Exh. 14 at 2) (emphasis added).  Furthermore, the Sixth Circuit has held that "an employer is not rigidly bound by the language in a job description," and hiring beyond the language used in a job description is not sufficient to establish pretext in a discrimination claim.  *Browning v. Dep't of the Army*, 436 F.3d 692, 697 (6th Cir. 2006) (internal citations omitted).

that he had more experience in the IT industry.  (Doc. # 38 at 3).  However, according to Vitas, Samlal performed better in the interview, he worked in IT for 23 years, had owned his own IT consulting company, and specifically held an ITIL certification that Meyrose lacked.  (Doc. # 39 at 3).  In short, Meyrose cannot show that he was "plainly superior" to the extent that no reasonable employer would have hired Samlal.

However, giving Meyrose another opportunity at establish pretext with respect to relative qualifications, the law provides that even if the plaintiff is "as qualified as, if not better qualified than the successful applicant," then pretext can be established if the record contains "other probative evidence of discrimination."  *Bartlett*, 421 F. App'x at 491 (internal quotations omitted).  Assuming that Meyrose was "as qualified" as Samlal, which is supported by them both having been offered interviews for the AVP position, Meyrose can thus establish pretext if the record contains other probative evidence of discrimination.

Nonetheless, however, that additional evidence must be truly probative of discrimination.  Other cases addressing "other probative evidence of discrimination" in this context have identified blatant and facially discriminatory remarks, such as a supervisor noting that "34 years on the job were 'enough'" or suggesting that the plaintiff should retire, *Bartlett*, 421 F. App'x at 491; a statement that "no one wants to work with a Black man," *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 385 (6th Cir. 2008); multiple pieces of evidence suggesting a "discriminatory atmosphere" in the workplace, *Rachells v. Cingular Wireless Empl. Servs., LLC*, 732 F.3d 652, 669 (6th Cir. 2013); or the record indicating that "male officers frequently made degrading comments regarding the

23

capabilities of female officers," such as "the chief will never have a female on the command staff." *Risch*, 581 F.3d at 390 (internal quotations omitted).

Here, no comparable evidence exists. Meyrose has attempted to create comparable evidence by taking a statement out of context, *see supra* part II(B)(3), which falls woefully short of raising a *genuine* issue of material fact. As do his own subjective beliefs that he was "the most qualified person" and that the hiring "doesn't make sense." Unfortunately, a plaintiff's assertion that a decision "doesn't make sense" is not sufficient grounds to avoid summary judgment, as a juror who would decide a case based only upon what "makes sense" is hardly a reasonable one. In short, because Meyrose's qualifications are not "plainly superior" to Samlal's, he needs comparably probative evidence to establish pretext on relative qualifications, and seeing none, the Court moves to Meyrose's final argument in favor of pretext.

Finally, Meyrose posits that "the ideas presented in the interview [being] implemented" supports a finding of pretext as to Vitas' legitimate reasons for hiring Samlal over Meyrose, which primarily rest upon Meyrose's allegedly poor interview performance. (Doc. # 38 at 18). Meyrose appears to argue that his interview performance could not possibly have been poor if the company took ideas he presented in the interview and then implemented them. However, Meyrose fails to provide the Court with any record citation to show that his ideas were implemented. (*Id.*). In an earlier part of the brief, where Meyrose does mention this assertion (*id.* at 4), he only cites to his own deposition, at page 59, wherein he stated "I see some things that were in my presentation that they actually implemented." No evidence has been provided to support *what* things were implemented, and no evidence has been provided at all beyond Meyrose's bald assertion and its

24

verbatim restatement in the briefs, which unfortunately forms no basis for a finding of pretext. Accordingly, because Meyrose cannot raise a genuine issue of material fact as to whether Vitas' failure to promote him was pretext for its proffered legitimate reasons for the action, no reasonable juror could find in his favor on the claim.

Unfortunately for Meyrose, "an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Miles*, 946 F.3d at 886. And so in close, the Court finds that no reasonable juror could find for Meyrose on either claim, which it has construed from the pleadings in a light most favorable to him. The Court further finds that Meyrose has failed to raise a genuine issue of material fact as to the pretext element of both claims under the *McDonnell Douglas* burden shifting framework, and thus, Vitas' Motion for Summary Judgment (Doc. # 32) is granted in full.

## III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)     Defendant Vitas Hospice Services, LLC's Motion for Summary Judgment (Doc. # 32) is **GRANTED;**

(2)     This matter is **DISMISSED AND STRICKEN** from the Court's active docket; and

(3)     An accompanying **JUDGMENT** shall be filed contemporaneously herewith. This 3rd day of November, 2021.



Signed By:

*David L. Bunning*

**United States District Judge**